UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BENJAMIN COLBY SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) Nos. | 2:15-CR-41-RLJ-MCLC-1 |
| | ) | 2:16-CV-175-RLJ |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 108].[1] The United States responded in opposition on July 29, 2016 [Doc. 200]; Petitioner replied in turn on August 18, 2016 [Doc. 201]. For the reasons below, the petition will be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

In August of 2014, Petitioner was obtaining methamphetamine in multiple-once quantities from a supplier in Georgia and giving that methamphetamine to co-defendants to distribute for him in the Morristown area of the Eastern District of Tennessee [Doc. 58 ¶ 5(b)]. On September 2, 2014, Petitioner was in possession of three ounces of methamphetamine and gave one of those ounces to a co-defendant to distribute in Morristown, Tennessee [*Id.* ¶ 5(c)]. That evening law enforcement pulled Petitioner and an unindicted co-conspirator over for a traffic stop and a search

---

[1] On February 11, 2016, the Court appointed Federal Defender Services of Eastern Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). After receiving notice of a conflict of interest, the Court appointed substitute CJA counsel to fulfill FDSET's duties under the Standing Order [Docs. 109, 112]. Counsel notified the Court that he did not plan to file a supplement in support of *Johnson*-based relief [Doc. 113].

of the vehicle resulted in the seizure of approximately 45 grams of actual methamphetamine [Id. ¶ 5(d)]. After Petitioner's arrest, he made several recorded drug-related phone calls from the jail to arrange for co-defendants to travel to Georgia to meet with his supplier and bring back enough money to pay his bond [Id. ¶ 5(d)]. The co-defendants traveled to Georgia, met the source, and obtained methamphetamine to sell to raise money for Petitioner's bond [Id. ¶ 5(g)]. Law enforcement officers pulled those co-defendants over for a traffic stop on their way back to Tennessee and seized 51.60 grams of methamphetamine (37.31 actual grams) [*Id.*].

A federal grand jury charged Petitioner with conspiring to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) [Doc. 3].[2] In October of 2015, Petitioner pled guilty pursuant to a written Rule 11(c)(1)(C) plea agreement to the lesser included offense of conspiring to distribute at least 5 grams of actual methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) [Doc. 58 ¶ 1]. In his plea agreement, Petitioner stipulated that he conspired to distribute and was accountable for at least 35 grams of actual methamphetamine [*Id.* ¶ 5(h)]. The parties agreed that a sentence of 200 months' imprisonment followed by 8 years' supervised release would be appropriate [*Id.* ¶ 2(a)].

Petitioner "knowingly and voluntarily waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255," except for claims of ineffective assistance of counsel or prosecutorial misconduct [*Id.* ¶ 11(b)]. He also waived his right to direct appeal as follows:

> The defendant will not file a direct appeal of [his] conviction(s) or sentence with one exception: the defendant retains the right to appeal a sentence imposed above

---

[2] In addition to the above-referenced charge (Count One), Petitioner was also charged with possessing with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine (Count Two) and four counts of using a communication facility to facilitate the conspiracy charged in Count One (Counts Eight through Eleven) [Doc. 3]. The United States moved the Court to dismiss these counts at sentence [Doc. 58 ¶ 4].

the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater.

[*Id.* ¶ 11(a)].

During the plea colloquy on October 22, 2015, the Court verified that Petitioner was not suffering from mental illness or drug addiction, and that he understood the purpose of the hearing [Doc. 116 pp. 3–4]. The Court confirmed that Petitioner had ample time to discuss his case and the charges against him with counsel [*Id.* at 4]. Petitioner also affirmed that counsel advised him of the nature and meaning of the charges and every element of those offenses, and that counsel advised him as to any defense that he might have to the charges [*Id.* at 4–5]. When asked if his lawer explained the terms of the plea agreement to him, Petitioner replied: "Yes, Sir" [*Id.* at 5].

After the Court advised Petitioner of the legal rights that he was giving up by pleading guilty and denying that anyone had threatened him or forced him in any way to plead guilty, the prosecutor summarized the plea agreement and the elements of the offense [*Id.* at 5–8]. Because the stipulation of facts was lengthy and fully signed and executed, the parties agreed that only a summary of those facts would be read aloud [*Id.* at 8–11]. Among other things, the prosecutor specifically mentioned the following: when Petitioner was arrested after a traffic stop on September 2, 2014, he was in possession of 45 grams of methamphetamine; that Petitioner directed other co-defendants to travel to Georgia to obtain additional methamphetamine from Petitioner's supplier; and that the co-defendants were thereafter found with multiple baggies of methamphetamine weighing 51.06 grams which contained 37.31 grams of actual methamphetamine, a small amount of marijuana, and an additional amount of methamphetamine hidden in the purse of one of the co-defendants [*Id.* at 10–11]. Petitioner stipulated that he had conspired to distribute and was accountable "for at least 35 grams but not more than 50 grams of

3

methamphetamine, actual methamphetamine" [*Id.* at 11]. The Court asked Petitioner if he agreed with the United States' summary of what he did and Petitioner responded: "Yes, Sir" [*Id.*]. He stated that he was pleading guilty based on those facts and because he was, in fact, guilty [*Id.*].

The Court reminded Petitioner that the statutorily authorized penalty for his offense was a term of no less than five years up to 40 years' imprisonment, but that, pursuant to his Rule 11(c)(1)(C) plea agreement, he would receive a term of 200 months' imprisonment followed by 8 years of supervised release [*Id.* at 12]. Petitioner swore that, knowing the penalties for his offense, he still wished to plead guilty [*Id.* at 12–15]. The Court concluded that Petitioner's plea was knowing and voluntary, accepted the plea, and adjudged him guilty [*Id.* at 15–16].

In calculating the applicable Guidelines range, the United States Probation Office assigned Petitioner an initial base offense level of twenty-eight based on the quantity of drugs stipulated in the plea agreement [Doc. 81 ¶ 19]. Based on three prior Georgia convictions—robbery, possession of pseudoephedrine and tools to manufacture methamphetamine, and aggravated assault, the United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines with an enhanced base offense level of thirty-four [*Id.* ¶¶ 25, 32, 36, 37]. Petitioner, through counsel, objected to the use of his Georgia robbery conviction as a career-offender predicate [*Id.* ¶ 32; Doc. 97]. The United States Probation Office responded that Petitioner remained a career offender without that conviction because of his prior drug and aggravated assault convictions [*Id.*]. A three-level reduction for acceptance of responsibility resulted in a total offense level of thirty-one [Doc. 81 ¶¶ 26–28]. Combined with a criminal history category of VI, the total offense level yielded a range of 188 to 235 months [*Id.* ¶¶ 38–41, 64].

At sentencing on January 26, 2016, counsel for Petitioner advised the Court that the 200-month sentence negotiated in the Rule 11(c)(1)(C) plea agreement stemmed from the belief that

4

Petitioner was a career offender "based upon those two predicate convictions that seemed to lack meritorious challenge" [Doc. 115 p. 4]. The Court accepted the plea agreement and sentenced Petitioner to 200 months' imprisonment, to run consecutive to his then-pending parole violation cases in Ben Hill County, Georgia Superior Court, and in Bibb County, Georgia Superior Court [*Id.* at 6; Doc. 99]. Petitioner did not appeal and, as a result, his conviction became final for purposes of § 2255(f)(1) on February 9, 2016. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the time for filing a direct appeal has elapsed); Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within [fourteen] days.").

The Supreme Court decided *Johnson v. United States*—invalidating the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)—on June 26, 2015. 135 S. Ct. 2551 (2015). Petitioner filed the instant pro se petition on June 20, 2016 [Doc. 108].

## II.    STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

5

## III. ANALYSIS

Petitioner articulates four grounds for collateral relief: three theories of ineffective assistance of counsel; and a request for vacatur of his sentence based on the *Johnson* decision.

### A. Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

6

The petition contains three theories of ineffective assistance. In the first, Petitioner argues that trial counsel's should have challenged Petitioner's conviction for the lesser-included offense of conspiring to distribute at least 5 grams of actual methamphetamine as an impermissible deviation from the charge contained in Petitioner's indictment—conspiracy to distribute 50 or more grams of actual methamphetamine [Doc. 108 pp. 4–6]. In the second, Petitioner suggests that counsel should have challenged the use of his prior Georgia drug conviction as a career offender predicate based on *Descamps v. United States*, 133 S. Ct. 2276 (2013) [*Id.* at 4, 7]. In the third, Petitioner argues that counsel should have filed a direct appeal [*Id.* at 8].

### 1. Conviction for a Crime Outside Grand Jury Indictment

In his first theory of ineffective assistance, Petitioner argues that counsel should have challenged the validity of the conviction for conspiracy to distribute at least five grams of *actual* methamphetamine when the indictment charged Petitioner with conspiracy to distribute 50 or more grams of methamphetamine without any mention of the term "actual" [*Id.* at 4–6 (characterizing his conviction as "outside the scope of the grand jury's specific element that was charged")].

The Sixth Circuit recognizes three types of modifications to an indictment that can raise constitutional problems: actual amendment; constructive amendment; and variance. U*nited States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). Actual amendment occurs when the prosecutor changes the actual text of the indicting instrument. *Id.* As for the other forms of deviation:

> A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructs which so modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment. Constructive amendments are per se prejudicial because they infringe upon the Fifth Amendment's grand jury guarantee. Because of the constitutional injury that results from a constructive amendment, when proven, a defendant is entitled to a reversal of his conviction.

7

> In contrast, a variance is not per se prejudicial. Instead, reversal is only warranted when a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right of the defendant. Generally speaking, a variance occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.

*United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016). None are present in the instant case.

As an initial matter, conviction on lesser-included offense does not constitute an amendment—actual, constructive, or otherwise—to or a variance from an indictment for the greater offense. Nor does basing Petitioner's base offense level under Section 2D1.1 on the quantity of actual methamphetamine possessed constitute a violation of his Fifth Amendment right to a grand jury. Further, the facts to which Petitioner stipulated in his plea agreement provide ample basis for his conviction to the lesser-included offense. Count One of the indictment charged that between September 2013 and October 2014 Petitioner conspired to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 846 and 841(b)(1)(A) [Doc. 3]. Petitioner admitted in the plea agreement that by August 2014, he was supplying at least half-ounce quantities of methamphetamine to a co-defendant approximately twice a week and he customarily obtained several ounces of methamphetamine at a time from his source of supply in Georgia [Doc. 58 ¶ 5(b)]. Petitioner admitted that law enforcement arrested him on September 2, 2014, in possession of approximately 45 grams of actual methamphetamine [*Id.* ¶ 5(c)].[3] Unable to make bond and needing enough money to get out of jail before he violated his parole, Petitioner directed co-conspirators on September 10, 2014, or September 11, 2014, to travel to Georgia to meet with his supplier, bring methamphetamine back to Tennessee, and sell it for Petitioner [*Id.* ¶ 5(d)–(g)]. Law enforcement pulled over Petitioner's co-conspirators on their way back to Tennessee and seized

---

[3] The laboratory analysis of this methamphetamine showed a weight of 55.1 grams containing 45.3 grams of pure methamphetamine.

8

37.31 grams of pure methamphetamine [*Id.* ¶ 5(g)]. The foregoing facts align with the allegations in the indictment and support a conviction for the lesser-included offense of conspiracy to distribute at least 5 grams of actual methamphetamine.

Because Petitioner has failed to demonstrate that he incurred prejudice because of the decision not to challenge his conviction and sentence as a violation of the Fifth Amendment grand jury guarantee, the Court need not address whether that same omission amounted to a deviation from professional norms. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection).

### 2. Failure to Challenge Career Offender Designation Based on *Descamps*

In his second theory of ineffective assistance, Petitioner argues that counsel should have challenged the designation of his prior Georgia conviction for possession of pseudoephedrine with intent to manufacture methamphetamine as a "controlled substance offense" under Section 4B1.1(a)(3) [Doc. 108 pp. 4, 7]. Specifically, Petitioner suggests that "because [his] conviction could have been punished as a misdemeanor 'rather than a felony' under federal law, it was not categorically an aggravated felony" for purposes of career offender enhancement [*Id.* at 7].

For purposes of career offender enhancement, "controlled substance offense" is defined as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Manual § 4B1.2(b). Despite Petitioner's suggestion to the contrary, it is irrelevant for purposes of the career offender analysis whether another jurisdiction would have treated the same conduct as a "misdemeanor" or a "felony." The *Descamps* decision is inapposite.

9

For purpose of the instant case, Petitioner's prior Georgia conviction for possession of pseudoephedrine with intent to manufacture methamphetamine involved the violation of a criminal provision that prohibited the manufacture of a controlled substance and carried a maximum penalty in excess of one years' incarceration. It is irrelevant how similar conduct would have been categorized under 21 U.S.C. 802(44) and whether the resulting offense of conviction would have been characterized as a misdemeanor or a felony drug crime.[4] Again, because the Court would have rejected a *Descamps*-based challenge to the use of Petitioner's prior drug conviction as a career offender predicate, the Court need not determine whether counsel deviated from norms.

### 3. Failure to File a Direct Appeal

In his third and final theory of ineffective assistance, Petitioner claims that trial counsel erred when he failed to file a direct appeal [Doc. 108 p. 8]. Specifically, Petitioner claims that counsel improperly advised him that there were no meritorious grounds for appeal and that, without that advice, Petitioner would have filed a timely direct appeal [*Id.*]. The claim lacks merit.

In *Roe v. Flores-Ortega*, the Supreme Court set forth two situation-specific tests for determining whether failure to file a notice of appeal on behalf of a client rises to the level of constitutionally deficient performance. 528 U.S. 470, 478–81 (2000). In the first scenario—where the defendant specifically instructs counsel to file a notice of appeal—the attorney acts in a professionally unreasonable manner by disregarding that instruction. *See id.* at 478 ("We have

---

[4] Moreover, contrary to Petitioner's claim, the possession of equipment, chemicals, products, and materials which may be used to manufacture methamphetamine is a federal felony offense under 21 U.S.C. § 843(a)(6), which carries a term of imprisonment of not more than 10 years' imprisonment. 21 U.S.C. § 843(a)(6), (d)(2). The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). In the second scenario—where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken"—the question "whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 479 (defining "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes"). In the latter situation—where the defendant did not previously request that the appeal be filed—consulting him about the futility of a potential appeal obviates counsel's obligation to file a notice unless expressly instructed to file the appeal anyway. *See id.* ("Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

Petitioner does not claim that he asked trial counsel to file a direct appeal or that trial counsel ignored an express request for the same. As such, the instant case is one in which counsel's only obligation was to advise his client about the merits or futility of a potential appeal. Because it appears that trial counsel did all that the law required under the circumstances, the third theory of ineffective assistance fails as a matter of law. *See, e.g.*, *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (explaining that the Sixth Amendment right to counsel is "only implicated when a defendant actually requests an appeal, and his counsel disregards the request").

### B. Propriety of Career Offender Enhancement After the *Johnson* Decision

In addition to the foregoing grounds of ineffective assistance of counsel, Petitioner argues that the *Johnson* decision removed Georgia robbery and Georgia aggravated assault from Section

11

4B1.2's definition of "crime of violence" and that, without that conviction, Petitioner lacks sufficient predicate offenses for enhancement [Doc. 108 pp. 4, 6].[5]

### 1. Waiver

It is well established that an informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). The Sixth Circuit recently held that the same is true even where that waiver prevents a petitioner from challenging his base offense level or career offender enhancement based on the *Johnson* decision. *See In re Garner*, No. 16-1655, 2016 WL 6471761, at *1–2 (6th Cir. Nov. 2, 2016) (denying leave to file a successive petition challenging career offender enhancement based on the *Johnson* decision where defendant voluntarily waived his right to raise collateral challenges).

"The Federal Rules of Criminal Procedure give the parties ample room to tailor plea agreements to different needs—whether they are the right to appeal, the right to benefit from future

---

[5] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual § 4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual § 4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

12

changes in the law or other concerns that the defendant . . . may have." *United States v. Bradley*, 400 F.3d 459, 466 (6th Cir. 2005). For purposes of the instant case, Petitioner "knowingly and voluntarily" waived his right to collaterally challenge his sentence with the exception of cases which involve claims of ineffective assistance or prosecutorial misconduct [Doc. 58 ¶ 11(b)]. The fact that "developments in the law [have] expand[ed] [Petitioner's forfeited] right [of collateral review] . . . does not suddenly make [his] plea involuntary or unknowing or otherwise undo its binding nature." *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). In light of the binding nature of Petitioner's wavier, the instant § 2255 motion will be dismissed. *Accord United States v. Avery*, No. 3:16-cv-2, 2016 WL 7467967, at *4–6 (S.D. Ohio Dec. 28, 2016) (denying *Johnson*-based challenge based on pre-*Johnson* waiver); *United States v. Strauss*, No. 16-cv-11397, 2016 WL 68733398, at *2–3 (E.D. Mich. Nov. 2, 2016) (same); *United States v. Muller*, No. 16-cv-20009, 2016 WL 6892268, at *2–3 (E.D. Mich. Nov. 2, 2016) (same).[6]

### 2. Merits of *Johnson*-Based Guideline Challenge

Even if the waiver contained in the plea agreement did not bar Petitioner's challenge, it would fail as a matter of law. On March 6, 2016, the Supreme Court held that the United States Sentencing Guidelines are "not amendable to vagueness challenges." *Beckles v. United States*, No.

---

[6] While this Court recognizes that courts within this district have repeatedly stated that it is "far from clear" that waiver of the right to collaterally challenge a sentence can be enforced to bar challenges based on the *Johnson* decision, *Mefford v. United States*, No. 3:15-cv-575, 2016 WL 1737094, at *1, n. 1 (E.D. Tenn. May 2, 2016); *Cox v. United States*, No. 3:15-cv-362, 2016 WL 552350, at *1, n. 1 (E.D. Tenn. Feb. 10, 2016); *Nance v. United States*, 3:15-cv-387, 2016 WL 527193, at *1, n. 1 (E.D. Tenn. Feb. 9, 2016), each of those cases alleged improper categorization under the ACCA. Unlike mistaken enhancement under the ACCA, improper career offender or base offense level enhancement does not result in a sentence "in excess of the maximum authorized by law." *See, e.g.*, *United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *14 (W.D. Ky. Nov. 7, 2008) (explaining that knowing and voluntary waivers are enforceable so longs as they do not result in a miscarriage of justice and that a miscarriage of justice arises where the sentence imposed exceeds the statutory maximum permissible).

13

15-8544, 2017 WL 855781, at *7 (U.S. March 6, 2017). As a result, the *Johnson* decision does not provide a basis for vacating, setting aside, or correcting Petitioner's sentence.

## IV.   CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 108] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge